CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 1 3 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **CLYDE TUCK,** | ) | **CASE NO. 7:11CV00450** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OPINION** |
| **vs.** | ) | |
| | ) | |
| | ) | |
| **DIRECTOR, ET AL.,** | ) | **By: Glen E. Conrad** |
| | ) | **Chief United States District Judge** |
| **Defendants.** | ) | |

Clyde Tuck, a Virginia inmate proceeding pro se, is pursuing this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendant prison officials were deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights. Defendant Nurse Elko has filed a motion to dismiss. After review of the record, the court grants Nurse Elko's motion and summarily dismisses Tuck's remaining claims without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B),[1] for failure to state a claim.

### I

Tuck filed his § 1983 complaint in the United States District Court for the Eastern District of Virginia. Because the cause of action arose in this district, however, the Eastern District transferred the case to this court. Tuck's § 1983 form indicated that an attached "motion for judgment" and "affidavit" contained his § 1983 claims for relief. The court entered an order advising Tuck that the submissions the court received did not include a "motion for judgment" and that he would need to submit an amended complaint, making a clear statement of his claims and the facts in support. In response, Tuck submitted three documents: (1) an "Amended

---

[1] This section requires that the court dismiss a case filed by a person afforded in forma pauperis status if it determines at any time that the action is frivolous, malicious or fails to state a claim on which relief may be granted. Eriline Co. v. Johnson, 440 F.3d 648, 656-57 (4th Cir. 2006).

Motion for Judgment under 42 U.S.C. § 1983 and Motion for Injunction" ("Amend. Compl.") (ECF No. 19); (2) an "Affidavit Related to Medical Issue" ("Affid.") (ECF No. 19), and (3) a "Motion for Judgment and Motion for Injunction" (ECF No. 23).[2] The court construed documents (1) and (2) as Tuck's amended complaint and served the defendants Tuck identified by name: the Medical Director ("the Director") of the Virginia Department of Corrections (VDOC) and Nurse Elko.[3] Nurse Elko filed her motion to dismiss, and Tuck responded, making that motion ripe for consideration.[4]

Tuck's submissions, liberally construed,[5] raise four general claims (Amend. Compl. ¶27) concerning the course of medical treatment he has received at Dillwyn Correctional Center ("DWCC") and provide the following scattered details and information related to these claims.

A. Throat Surgery Follow Up

Tuck underwent surgery for throat cancer in early 2011. He complains that DWCC medical staff did not take him back to the surgeon for follow up examinations as the surgeon ordered. (Amend. Compl. ¶14-15, 27(A); Affid. ¶3.) Tuck alleges that Nurse Elko cancelled the appointments and that she and the Medical Director for the VDOC know Tuck should have been given post-operative care related to the cancer surgery.

---

[2] The court initially construed ECF No. 23 as a separate motion for interlocutory injunctive relief and denied it. Upon reflection, however, it appears that this document is the motion for judgment that Tuck sought to incorporate by reference into the amended complaint (ECF No. 19).

[3] Tuck asserts that he is also suing every doctor and every nurse who treated him at DWCC, whom Tuck vaguely identifies as "unknown person number 1, 2, 3, etc." (Amend. Compl, ¶5)

[4] The Director has filed an answer, but has not filed a dispositive motion at this time.

[5] In his submissions docketed as ECF No. 23 and ECF No. 10, and in his response to the motion to dismiss, ECF No. 35, Tuck adds allegations and documents in support of his claims. The court construes and considers these documents as amendments to the amended complaint, ECF No. 19.

## B. Mouth Sores

Shortly after Tuck arrived at DWCC in early 2011 and began eating the standard inmate diet served at that facility, he developed painful, open sores in his mouth.[6]  (Amend. Compl. ¶40-41)  Medical staff provided Tuck with a prescription mouthwash.  (ECF No. 23, ¶9) )  Tuck alleges that this treatment only kills the pain from the mouth sores for fifteen minutes, and his submissions indicate that he went without the mouth wash for four days after staff failed to renew an order for the substance.  (ECF No. 10-3; ECF No. 35, p. 2)

Tuck asserts that he is allergic to "the processed foods that are normally served to the inmate population" (ECF No. 23, ¶5), particularly "processed meat" (ECF No. 35, p. 1).  Tuck alleges that in January 2011, a doctor at "MCV" told Tuck that he had an unspecified food allergy and would need a special diet (ECF No. 23, ¶¶4-6; 10-4, p. 4).  Tuck found that when he ate food from the commissary, such as tuna and peanut butter, he did not get mouth sores.  (ECF No. 10-4, p. 4)  When Tuck filed informal complaints and grievances in March and April 2011, asking to know what his diagnosis was regarding his mouth sores, Nurse Elko replied that he should talk to the doctor about this issue.  (ECF No. 10-6)  A doctor who examined Tuck on May 13, 2011, told Tuck that he would order an emergency transfer to move Tuck to a prison where "his severe food allergy could be better accom[m]odated and treated with a diet of non-processed foods, a Common [F]are Diet."  (Amend. Compl. ¶16-20, 27(B); ECF No. 23, ¶8)

The doctor's transfer order was not carried out, however.  Tuck's exhibits indicate that under VDOC prison regulations, an inmate may be approved for the common fare diet only when he has met certain criteria demonstrating that he has sincere religious beliefs requiring him to eat a diet consistent with the common fare diet.  (ECF No. 10-7)  Tuck does not allege that his

---

[6]   Tuck states that he did not suffer from mouth sores when he was incarcerated at Lunenburg Correctional Center, where he ate an unspecified "special diet."  ((Amend. Compl. ¶41)

religious beliefs require him to receive the common fare diet or that he has ever been approved for this diet under VDOC policy. Tuck submits documents indicating that in May 2011, a consulting physician at "MCV Oral Surgery" recommended that Tuck receive a special diet of tuna sandwiches, peanut butter and jelly sandwiches, eggs, and oatmeal and that he be referred to an allergist; the medical staff then asked the kitchen staff at DWCC to accommodate this diet for Tuck as far as possible. (ECF No. 10-7, pp. 1-2) Tuck states that he now receives peanut butter sandwiches and boiled eggs. (ECF No. 35, p. 1) Tuck argues that he has a serious medical need to receive the common fare diet, as ordered by the doctor in May 2011, and that the defendants' refusal to provide him this diet constitutes deliberate indifference.

### C. Blood Pressure Problems

Tuck alleges that he suffers from migraine headaches caused when his blood pressure fluctuates because of stress and that the defendants are not providing any treatment for the blood pressure problem. (Amend. Compl. ¶21, 27(C); Affid. ¶12; ECF No. 23, ¶14) Tuck alleges that the blood pressure fluctuations cause dizziness, pain in his eyes, and minor strokes. (Amend. Compl. ¶21, 27(C)) In particular, Tuck alleges that in April 2011, he "suffered a minor stroke," which the medical staff dismissed as a "mild head[ache]" and provided him with Tylenol.[7] (ECF No. 23, ¶15) Tuck alleges that while he has notified Nurse Elko's medical staff numerous times of his symptoms, including "incredibly painful head[aches]," the nurses "discount the complaints as being made-up by [Tuck] for attention." (Affid. ¶12)

Tuck's exhibits include a written complaint he filed in May 2011 and medical staff responses. (ECF No. 35-1) In these documents, Tuck claimed that after an earlier complaint he made in February 2011 that his fluctuating blood pressure was causing recurring migraine

---

[7] Tuck alleges that he "suffered from bleeding behind [his] right eye and the right temporal lobe of his brain was deeply affected from the minor stroke." (ECF No. 23 ¶16)

4

headaches, the staff failed to provide follow up care for these conditions. Tuck complained that the medical staff merely asked Tuck to file a sick call request if he wanted to see the doctor about his headaches or blood pressure. Tuck insisted that follow up care should be provided for these conditions without his having to exercise the sick call procedure, which requires the inmate to pay a $5.00 co-payment for each doctor visit. Medical staff advised Tuck that he could raise his concerns about his headaches and blood pressure to the doctor at his appointment on May 13, 2011.

### D. Access to Medical Records

Tuck alleges that Nurse Elko has refused to provide him access to his medical records or to provide him or his daughter (who is a registered nurse) with a copy of Tuck's medical records, although Tuck signed a medical release form. (Amend. Compl. ¶¶23-25; ECF No. 23, ¶17-18) Tuck asserts that denial of access to his records violates his rights under "HIPPA." (Amend. Compl. ¶27(D))

As relief in this action, Tuck seeks injunctive relief ordering the defendants to provide follow up visits to the surgeon; to allow him to receive the common fare diet; and to provide treatment for Tuck's fluctuating blood pressure. Tuck also seeks compensatory and punitive damages. (Amend. Compl. ¶¶ 30-31)

## II

Plaintiff's claims cannot survive a motion to dismiss unless he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S.662, 129 S. Ct. 1937, 1949 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (finding motion to dismiss properly granted where plaintiff's factual allegations do not state "plausible" claim for relief). The

5

complaint must allege facts sufficient "'to raise a right to relief above the speculative level,' thereby 'nudg[ing] the[ ] claims across the line from conceivable to plausible.'" Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011) (first alteration in original) (quoting Twombly, 550 U.S. at 555, 570).

In addressing whether the plaintiff has pled sufficient facts to state a claim, the court must view the facts in the light most favorable to the plaintiff, but "need not accept the legal conclusions drawn from the facts and . . . need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotations omitted). The court must accept factual conclusions the plaintiff draws "only to the extent they are plausible based on the factual allegations." Burnette v. Fahey, __F.3d__, No. 11-1324, 2012 WL 2695854, *6 (4th Cir. July 9, 2012). When dismissing a complaint for failure to state a claim upon which relief may be granted, courts may consider exhibits submitted in support of the complaint, and where a conflict exists between "the bare allegations of the complaint" and any of the plaintiff's exhibits, "the exhibit prevails." United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991); see also Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir. 1995).

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Punishments or prison conditions are "repugnant to the Eighth Amendment" if they . . . involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal quotations omitted). To prove that the course of

6

medical treatment he received amounted to a constitutional violation, an inmate must show that personnel to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." Id. at 104-105. Inadvertent failure to provide treatment, negligent diagnosis, and medical malpractice do not present constitutional deprivations. Id. at 105-106.

"[A] serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotations omitted). An official acts with deliberate indifference if he was aware of facts from which he could draw an inference that a substantial risk of harm existed, drew that inference, and disregarded or responded unreasonably to the risk. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

A disagreement between an inmate and medical personnel regarding diagnosis and course of treatment does not implicate the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Questions of medical judgment are not subject to judicial review under § 1983. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975). Plaintiff must allege "acts or omissions sufficiently harmful," which caused serious injury or aggravation or deterioration of an existing medical condition. Estelle, 429 U.S. at 106 (finding proper the court's dismissal of inmate's claim of insufficient medical treatment, where inmate complained of pain not relieved by medical treatment provided); Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993) (finding claim of cruel and unusual punishment must include showing plaintiff suffered serious injury from alleged violations); Staples v. Virginia Dep't of Corrections, 904 F. Supp. 487, 492 (E.D. Va. 1995) (dismissing § 1983 medical claim based on inmate plaintiff's failure to demonstrate

7

"an unnecessary and wanton infliction of pain which has resulted in serious medical or emotional deterioration").

A. Throat Surgery Follow Up

Tuck's claim that Nurse Elko denied him follow up visits to the surgeon after his throat surgery must be dismissed because he fails to allege any harm resulting from her alleged omission. Tuck does not allege any particular symptoms he experienced or any respect in which his physical condition deteriorated because he did not have follow up visits related to his past surgery.[8] The court will grant Nurse Elko's motion to dismiss as to this claim.

For the same reason, Tuck's allegations fail to state any actionable claim against the Director or any other medical personnel at DWCC. Thus, the court will summarily dismiss Tuck's claims against the Director and all John Doe defendants without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(b).

B. Mouth Sores

Liberally construing his submissions, Tuck alleges that Nurse Elko, the Medical Director for the VDOC, and numerous other unnamed medical personnel (1) from January to May 2011, knew that Tuck had a food allergy and needed a special diet, but failed to provide it to him; (2) failed to carry out the doctor's order on May 13, 2011 that Tuck be transferred so that he could receive the common fare diet; and (3) know that Tuck is not currently receiving the "right treatment" for his dietary needs. Because Tuck alleges that the mouth sores cause severe pain, the court will assume for purposes of this opinion that they constitute a serious medical need that should be treated. Iko, 535 F.3d at 241. Because the court finds that Tuck fails to allege facts on

_____

[8] Moreover, Tuck's submissions include a medical summary dated June 1, 2011 from the MCV oral surgery unit, apparently generated in connection with treatment of plaintiff's mouth sores. (ECF No. 10-7). Thus, plaintiff's own evidence indicates that he was seen by specialists during the period of time in which he believed he should have received follow-up for his throat surgery.

8

which he could prove the defendants acted with deliberate indifference to any serious need for a particular treatment, however, the court concludes that the motion to dismiss must be granted as to all three aspects of this claim.

First, Tuck does not allege that in January 2011, the MCV doctor identified any particular food to which Tuck was allergic or that this doctor or any other physician ordered any particular diet change or new treatment for Tuck at that time. When Tuck asked about his diagnosis, Nurse Elko advised him to discuss it with the doctor. Even if Nurse Elko knew from a specialist's note that Tuck's mouth sores related to a food allergy, nothing in the record indicates that she, as a nurse, could have determined what new diet would have been appropriate for Tuck's condition. Similarly, Tuck offers no evidence on which he could prove that Nurse Elko had authority to require the DWCC kitchen staff to provide a different diet without a doctor's order directing that Tuck had a medical need to receive, or avoid, particular foods. Tuck's allegations thus fail to demonstrate that Nurse Elko knew he had a serious medical need for any particular dietary change between January and May 2011, or that her response to his needs was unreasonable.

Second, Tuck's submissions indicate that the medical staff at DWCC have addressed Tuck's mouth sores by providing him with mouth wash, consultations with doctors in May 2011, and a subsequent dietary change. Tuck admits that the treatments provided do alleviate his symptoms to some extent and concedes that he is no longer required to eat the processed meats to which he claims to be allergic. While the physician consultations and dietary adjustments may not have been as prompt as Tuck would have liked, his allegations do not suggest that his mouth sores threaten his life or could cause lasting disability or otherwise present a serious medical need for immediate attention. It is common to experience delays when seeking to schedule a consultation with a medical specialist, even outside the prison context. Tuck's allegations

9

simply do not provide any basis for a claim that Nurse Elko knew of any particular treatment Tuck needed between January and May 2011 that was not being provided to, or arranged for, him.

Third, Tuck's submissions do not indicate that he has a serious medical need to receive the common fare diet, in May 2011 or at any time before or since. Tuck alleges vaguely that this diet does not contain "processed foods," while the standard DWCC diet does. The MCV specialist, however, recommended specific foods that could be provided to Tuck at DWCC to alleviate his food allergy. The fact that two doctors disagreed about precisely what diet would best address Tuck's medical needs weighs against a finding that Tuck has a serious medical need for one diet over the other. The critical factor is that Tuck's treating physician decided to address Tuck's food allergy problems by adjusting his diet at DWCC, and Nurse Elko could have rightfully relied on this treatment decision. Tuck now states that his current diet does not include the processed meats that he believes caused his mouth sores. (ECF No. 35, p. 1-2) Thus, Tuck's submissions do not state facts on which he could prove that Nurse Elko's acts or omissions have caused him harm or aggravated his allergy symptoms. Therefore, the court will grant Nurse Elko's motion to dismiss as to Tuck's food allergy claim.

For the same reasons, the court will also summarily dismiss Tuck's food allergy claim against the Director. Tuck's conclusory accusations against the Director are not plausible based on the facts stated in his submissions as a whole. Moreover, Tuck does not state any facts on which he could prove that the Director personally knew about Tuck's food allergy problems or the treatments recommended or provided for him. Supervisory officials cannot be vicariously liable for constitutional violations committed by officials under their supervision, and they may rightfully rely on the opinion of the inmate's treating physicians as to the proper course of

treatment for a particular condition.  Miltier v. Beorn, 896 F.2d 848, 855 (4th Cir. 1990).  To prove a supervisory official's liability, plaintiff must show that the official was personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment decisions, or tacitly authorized or was indifferent to the prison physicians' misconduct.  Id. at 854.  Tuck has failed to state facts making such a showing.  For the stated reasons, the court will dismiss Tuck's food allergy claim against the Director without prejudice, pursuant to § 1915(e)(2)(b), for failure to state a claim.

Finally, the court will also dismiss Tuck's food allergy claims against the unknown doctors and nurses he has attempted to sue, pursuant to § 1915(e)(2)(b).  Although directed to allege specifically in his amended complaint what each defendant did or did not do in violation of his constitutional rights, Tuck does not describe specific conduct committed by any of the unknown medical staff on any particular occasion.[9]  Thus, Tuck fails to provide even the basic outline of a § 1983 claim against any of these individuals.  West, 487 U.S. at 48.  Tuck's sweeping and conclusory accusation– that all of these individuals knew the treatment provided was not appropriate–is not plausible based on the facts provided by Tuck's submissions as a whole and need not be taken as true.  Burnette, __F.3d__, 2012 WL 2695854 at *6.

C.  Blood Pressure Problems

Tuck alleges broadly that Nurse Elko and the other defendants know he has blood pressure fluctuations that cause recurring migraines and are not providing any treatment.  This conclusion is not "plausible based on the factual allegations" contained elsewhere in Tuck's

---

[9]  Tuck asserts that his inability to access his medical records has prevented him from naming other medical personnel as defendants or from giving specific dates when he saw them, or the diagnoses and treatment they provided.  His amended complaint, however, does not even attempt to describe the personal involvement of any of these individuals by using estimated dates and general accounts of their actions.  Thus, the court cannot find that he has satisfied the pleading standard required for his claims against these defendants to survive screening under § 1915(e)(2)(b).

11

submissions, and therefore, the court need not accept it as true. Burnette, __F.3d__, 2012 WL 2695854 at *6. Tuck does not allege that Nurse Elko or the other defendants have observed the dire symptoms Tuck alleges (minor strokes, bleeding behind the eyes, etc.) or that any medical professional has made a medical finding that fluctuating blood pressure is a cause of Tuck's recurring headaches or his other symptoms. Tuck's self-diagnosis of blood pressure problems and strokes as the root of his headaches is not sufficient support for a claim that Nurse Elko or any of the other defendants knew of a serious medical need for blood pressure treatment related to his headaches. Moreover, Tuck's grievances indicate that he did not follow the required sick call procedure to request that a doctor evaluate his complaints about his blood pressure and his recurring headaches.[10] Thus, Tuck's allegations fail to show that any of the defendants acted with deliberate indifference to a known risk of serious harm, as required to state an Eighth Amendment claim regarding the course of treatment he has received.[11] The court will grant Nurse Elko's motion to dismiss as to Tuck's blood pressure claims, and will summarily dismiss these claims without prejudice, pursuant to § 1915(e)(2)(b), as to the Director and the other unspecified doctors and nurses.

---

[10]   To the extent that Tuck is complaining about medical copayment charges he must incur in order to obtain a medical evaluation of his blood pressure and headache complaints, his claim fails to implicate any constitutionally protected right. So long as an inmate is not denied medical treatment merely because he cannot pay for the full cost of that care, the state's decision to charge him a portion of that cost is a matter of state law, not actionable under § 1983. See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 245 (1983).

[11]   Because Tuck's complaint fails to allege facts showing that Nurse Elko's conduct violated his constitutional rights, she is entitled to qualified immunity against Tuck's claims for monetary damages. See Saucier v. Katz, 533 U.S. 194, 206 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009) (finding that where facts alleged do not show that defendant's conduct violated a clearly established constitutional right, then defendant is entitled to summary judgment without further discussion of qualified immunity).

12

D.  Medical Records

Tuck's allegations about his medical records fail to state any actionable claim against Nurse Elko or anyone else.  HIPAA, as the Health Insurance Portability and Accountability Act of 1996 is known, Pub. L. 104-191, 110 Stat. 1936 (1996), 42 U.S.C. § 1320d -1320d-9, governs a patient's right to see, get a copy of, and amend (correct) his or her own medical records.  The Act does not create a right for an individual to maintain a private law suit in his own name for a health provider's alleged violation of HIPAA.  See Acara v. Banks, 470 F.3d 569, 570-72 (5th Cir. 2006); Carpenter v. Phillips, 419 F. App'x 658 (7th Cir. 2011); Dodd v. Jones, 623 F.3d 563, 569 (8th Cir. 2010); Seaton v. Mayberg, 610 F.3d 530, 533 (9th Cir. 2010), cert. denied, __U.S.__, 131 S. Ct. 1534 (2011); Wilkerson v. Shinseki, 606 F.3d 1256, 1267 n. 4 (10th Cir. 2010).  The court will, therefore, grant Nurse Elko's motion to dismiss as to Tuck's HIPAA claim, and will summarily dismiss this claim without prejudice, pursuant to § 1915(e)(2)(B), as to all other defendants.

III

For the stated reasons, the court grants Nurse Elko's motion to dismiss and summarily dismisses Tuck's other claims without prejudice under § 1915(e)(2)(B) for failure to state a claim.  An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER:  This 13th day of July, 2012.

_Glen Conrad_

Chief United States District Judge

13